STATE of Alaska, Petitioner,

v.

Frank Augie ALTO, Respondent.

No. 3748.

Supreme Court of Alaska.

Jan. 12, 1979.

Timothy Petumenos, Asst. Atty. Gen., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for petitioner.

John M. Murtagh, Asst. Public Defender, Brian Shortell, Public Defender, Anchorage, for respondent.

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

MATTHEWS, Justice.

In a prior opinion in this case, we reversed defendant's murder and grand larceny convictions because the state had failed to sustain its burden of proving defendant's sanity beyond a reasonable doubt after defendant had presented testimony raising the issue. *Alto v. State,* 565 P.2d 492 (Alaska 1977). We remanded the case to the superior court for further proceedings pursuant to AS 12.45.090 which provides:

1. We commend counsel for both parties for their excellent briefs.

2. AS 12.45.083(b) provides:

*Commitment after judgment of not guilty.* If the jury finds the defendant not guilty on the ground of mental disease or defect and the court considers his being at large dangerous to the public peace or safety, the court shall order him to be committed to an institution authorized by the commissioner of health and social services to receive that person, and held in custody until the disease is cured or the defect corrected or he is otherwise discharged from the institution by authority of law.

We ordered that the defendant should remain in custody for sixty days unless a proceeding under the foregoing section was initiated by the state within that period. The state did commence such a proceeding, and the hearing was scheduled. The superior court ordered that at the hearing the state would have the burden of proving by a standard of clear and convincing evidence that the defendant is presently suffering from a mental disease or defect which renders him a danger to society. The state has petitioned for review from this order. The defendant has taken a cross-petition, contending that the state should have to prove that he is presently dangerously insane beyond a reasonable doubt. We granted review.[1]

We hold that the defendant, to obtain his release, must prove by a preponderance of the evidence that he is not presently suffering from a mental disease or defect which causes him to be a danger to the public peace or safety. In part I of this opinion we discuss the meaning of the statute and what we take to be the sound policy indicating this result; in part II we discuss constitutional considerations and conclude that they are consistent with this result.

### I

Under Alaska law, a plea of insanity in a criminal case is an affirmative defense.[2] When evidence is introduced sup-

(b) Reliance on mental disease or defect as excluding responsibility is an affirmative defense. The burden of proof beyond a reasonable doubt does not require the prosecution to disprove an affirmative defense unless and

porting the defense, the prosecution must prove beyond a reasonable doubt [3] that the defendant was not insane when he committed the act charged. A verdict of not guilty by reason of insanity contains within it the finding that, beyond a reasonable doubt, the defendant committed the act charged.[4] These statutory provisions were adopted by the legislature in 1972 based on sections contained in article IV of the Model Penal Code of the American Law Institute.[5]

The Model Penal Code provision concerning post-acquittal by reason of insanity procedures has not been adopted in Alaska. It requires the automatic commitment of a defendant who is acquitted by reason of insanity and gives him a release hearing as a matter of right, after a period of confinement for determination of his mental condition. At the hearing, the defendant has the burden of proving that he may be safely released.[6] Our statute on the subject, AS 12.45.090, has its origin in the statutes of Oregon which were adopted wholesale for the Territory of Alaska in 1884.[7] In our prior decision in this case, we interpreted AS 12.45.090, consistently with the Model Penal Code, as authorizing Alto's immediate commitment and requiring a prompt hearing as to what further disposition was appropriate. *Alto, supra* at 503. The statute does not, unlike the Model Penal Code, state

who has the burden of proof or what the standard of proof shall be.

Referring solely to the structure of the statute, the question to be determined at the hearing is whether "the disease is cured or the defect corrected." The defendant is seeking to show the affirmative of that question. Since the hearing is held while he is in custody, he is attempting to bring about a change in the existing status. Thus the statute appears to contemplate that the burden of proof shall be placed on the defendant.[8] The Oregon Supreme Court, construing the statute from which AS 12.45.090 is taken, has reached that conclusion. *Newton v. Brooks,* 426 P.2d 446, 450 (Or.1967).

■ Until the adoption of the Model Penal Code insanity provisions, the burden of proving insanity during a criminal trial was on the defendant by a preponderance of the evidence. *Chase v. State,* 369 P.2d 997, 1003 (Alaska 1962). The fact that the burden of proving insanity is now placed on the state beyond a reasonable doubt makes it important to require that one who is acquitted by reason of insanity prove that he is not a danger to the public peace and safety because of his mental condition. To require the state, as the superior court's order does, to prove present insanity and dangerousness by clear and convincing evidence, would create a broad range of offenders

until there is evidence supporting the defense. The requirement of evidence supporting the affirmative defense is not satisfied solely by evidence of an abnormality which is manifested only by repeated criminal or otherwise antisocial conduct.

3. *Id.*

4. That is the implication of AS 12.45.083(c) which provides:

(c) If the defendant is acquitted on the ground of mental disease or defect excluding responsibility, the verdict and the judgment shall so state.

The jury should be expressly instructed that the issue of insanity is not to be considered unless it finds the defendant otherwise guilty. *Lynch v. Overholser,* 369 U.S. 705, 714, 82 S.Ct. 1063, 8 L.Ed.2d 211, 217 (1962); *United States v. Brown,* 155 U.S.App.D.C. 402, 406, 478 F.2d 606, 610 (1973).

5. Model Penal Code § 4.03 (Proposed Official Draft, 1962).

6. *Id.* at § 4.08(3).

7. Act of May 17, 1884, 23 Stat. 24. *See Newton v. Brooks,* 426 P.2d 446, 447 (Or.1967); 1913 CLA § 2272.

8. *Skagway City School Board v. Davis,* 543 P.2d 218, 222 (Alaska 1975):

In allocating the burden to appellants on this issue, we are in accord with the general evidentiary rule applicable in civil cases whereby the defendant has the burden of persuasion in establishing those facts which he is required to affirmatively plead.

C. McCormick, Evidence § 337, at 786 (2d ed., E. Cleary, ed. 1972):

The burdens of pleading and proof with regard to most facts have been and should be assigned to the plaintiff who generally seeks to change the present state of affairs.

beyond the reach of the law. They would be those who are neither sane beyond a reasonable doubt, and who therefore cannot be convicted, nor clearly insane, and therefore cannot be committed. The discipline of psychiatry is not so exact that we can with any degree of confidence suppose that the number of offenders who fall within this category will be inconsequential.

In *Bolton v. Harris,* 130 U.S.App.D.C. 1, 395 F.2d 642 (1968), the Court of Appeals for the District of Columbia held that a defendant acquitted on grounds of insanity was entitled to be released unless the government could prove by a preponderance of the evidence a present mental illness. At the time *Bolton* was decided, the government had the burden of proving sanity beyond a reasonable doubt at the criminal trial. Congress promptly overturned *Bolton* and placed on the insanity acquittee the burden of proving that he was no longer mentally ill.[9] The house committee report detailed the reason for dissatisfaction with *Bolton* :

> This ruling permits dangerous criminals, particularly psychopaths, to win acquittals of serious criminal charges on grounds of insanity by raising a mere reasonable doubt as to their sanity and then to escape hospital commitment because the government is unable to prove their insanity following acquittal by a preponderance of the evidence. The result is a revolving door which, as now Chief Justice Burger explained in rejecting such an outcome in *Overholser v. O'Beirne,* 112 U.S.App.D.C. 267 at 276, 302 F.2d 852 at 861 (1962) allows defendants to "have it both ways"—to escape both conviction and commitment to a hospital.

The Committee considers this result intolerable. It neither protects the public safety nor provides treatment for a defendant acquitted of a crime on grounds of insanity.

H.R.Rep.No.907, 91st Cong., 2d Sess. 73–5 (1970).

We conclude, based on the foregoing that the burden of proof should be on the defendant at a post-acquittal hearing. The state does not urge that a defendant must carry this burden by a standard of proof more strict than by a preponderance of the evidence, and we agree that is the appropriate standard.[10]

## II

■ The defendant argues that the due process and equal protection clauses of the Alaska and United States Constitutions prohibit placing the burden of proof on him at the post-insanity acquittal hearing.

The due process argument is plainly wrong. It is not a violation of the due process clause to place the burden of proving insanity on a defendant during prosecution of the case-in-chief.[11] *A fortiori,* due process does not preclude allocation of the burden of proof to the defendant at the post-acquittal commitment hearing.

■ The equal protection argument has more weight. Equal protection has been interpreted to require that an insanity acquittee receive essentially the same protection afforded to a person who is civilly committed by reason of insanity, except where there are good reasons for different treatment.[12] Alaska's civil commitment statutes, AS 47.30.060–.070, are silent on burden and standard of proof. However, we assume for the purposes of this opinion that in involuntary civil commitments by reason of insanity, the burden of proof is on

**9.** Pub.L.No.91–358, § 207(7), 84 Stat. 601 (1970), D.C.Code § 24–301 (1973).

**10.** *In re Franklin,* 7 Cal.3d 126, 101 Cal.Rptr. 553, 496 P.2d 465, 478–479 (1972); *Newton v. Brooks,* 426 P.2d 446, 450 (Or.1967).

**11.** *Leland v. Oregon,* 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952). The continuing validity of *Leland* was recently reaffirmed.

*Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977).

**12.** *Bolton v. Harris,* 130 U.S.App.D.C. 1, 395 F.2d 642 (1968); *In re Franklin,* 7 Cal.3d 126, 101 Cal.Rptr. 553, 496 P.2d 465 (1972); *People v. McQuillan,* 392 Mich. 511, 221 N.W.2d 569 (Mich.1974); *People v. Lally,* 19 N.Y.2d 27, 277 N.Y.S.2d 654, 224 N.E.2d 87 (1966).

the state [13] and that the standard of proof is higher than a preponderance of the evidence.[14] Making that assumption, the question is whether equal protection requires the same standard of proof and the same burden of proof in cases where there has been an acquittal by reason of insanity.

We believe there are legitimate reasons for a different result. The acquittee by reason of insanity has, by his affirmative defense, admitted that he was insane at the time of the act in question and he has presented evidentiary support for his admission. Such an admission distinguishes the acquittee by reason of insanity from one whose involuntary commitment is civilly sought and has consistently maintained that he is not mentally ill. Moreover, the acquittee by reason of insanity has committed a criminal act. He therefore differs from the civil committee who is confined because of his potential to commit dangerous acts, not because he has committed them.

The importance of the voluntary plea of insanity is underscored by *Lynch v. Overholser,* 369 U.S. 705, 82 S.Ct. 1063, 8 L.Ed.2d 211 (1962). The defendant there had never interposed an insanity defense or claimed a mental illness, but he was found not guilty by reason of insanity based on evidence adduced by the prosecution. Thereupon he was committed under mandatory commitment provisions then existing in the District of Columbia.[15] The Supreme Court interpreted these provisions to apply only to a defendant acquitted on the ground of insanity who has affirmatively relied on the defense of insanity, but not to a person who has maintained that he was mentally re-

sponsible. Such an interpretation was necessary in order to avoid "not insubstantial constitutional doubts." 369 U.S. at 711, 82 S.Ct. at 1067, 8 L.Ed.2d at 216. The court took pains to distinguish the case from one in which the accused pleads insanity as an affirmative defense:

> The criminal defendant who chooses to claim that he was mentally irresponsible when his offense was committed is in quite a different position. It is true that he may avoid the ordinary criminal penalty merely by submitting enough evidence of an abnormal mental condition to raise a reasonable doubt of his responsibility at the time of committing the offense. Congress might have thought, however, that having successfully claimed insanity to avoid punishment, the accused should then bear the burden of proving that he is no longer subject to the same mental abnormality which produced his criminal acts. Alternatively, Congress might have considered it appropriate to provide compulsory commitment for those who successfully invoke an insanity defense in order to discourage false pleas of insanity.

*Id.* at 715, 82 S.Ct. at 1069, 8 L.Ed.2d at 218.

■ The standard of proof which is fixed for the adjudication of any particular question reflects a judgment as to the acceptability of a mistaken determination. For example, placing the burden of proof on the state beyond a reasonable doubt in criminal cases reflects our belief that it is worse than an innocent man be jailed than that a guilty man go free.[16] The differences be-

---

**13.** See *People v. Redmond,* 16 Cal.App.3d 931, 94 Cal.Rptr. 543, 549 (1971); *In re Burnett's Guardianship,* 30 Wash.2d 160, 191 P.2d 283, 284 (1948).

**14.** See *Binder v. Binder,* 50 Wash.2d 142, 309 P.2d 1050, 1053 (1957) (clear, cogent, and convincing evidence necessary to establish mental incompetence); *Tecklenburg v. Washington Gas and Electric Co.,* 40 Wash.2d 141, 241 P.2d 1172, 1174 (1952).

**15.** D.C.Code § 24–301(d) (1973).

**16.** Mr. Justice Harlan explained this in some detail in his concurrence in *In Re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970):

> [T]he reason for different standards of proof in civil as opposed to criminal litigation becomes apparent. In a civil suit between two private parties for money damages, for example, we view it as no more serious in general for there to be an erroneous verdict in the defendant's favor than for there to be an erroneous verdict in the plaintiff's favor. A preponderance of the evidence standard therefore seems peculiarly appropriate for, as explained most sensibly, it simply requires the trier of fact "to believe that the existence

tween a civil commitment proceeding and a post-acquittal hearing, as they relate to the burden and standard of proof, can be readily illustrated. In a civil commitment, if a mistake is made and a sane man is determined to be insane, the result will be the involuntary commitment of a person of sound mind who has committed no criminal act. This is an intolerable result, which justifies placing a heavy burden on the party seeking commitment. If the same mistake is made in a post-acquittal proceeding, it will mean that one who has committed a criminal act and who has escaped criminal responsibility for it, perhaps because of an earlier duplication of the same mistake, will be institutionalized. The consequences of the mistake in this case seem much less condemnable than in the civil proceeding and justify a different margin of error. *See United States v. Brown,* 155 U.S.App. D.C. 402, 405, 478 F.2d 606, 609 (1973).

Apart from the possibilities of mistake, the opportunity to abuse the defense of insanity has often been noted,[17] and is itself a reason for differing burdens and standards of proof.

The defendant argues that in jurisdictions in which an acquittal by reason of

insanity follows from a finding by a preponderance of the evidence that the defendant is insane, it may be acceptable to place the burden of proving insanity on the defendant in a post-acquittal proceeding. Such a result is not acceptable, the argument continues, in jurisdictions like ours where the verdict of not guilty by reason of insanity carries with it only a determination that a reasonable doubt exists as to the insanity of the accused at the time of the commission of the act.[18] This argument, however, ignores the importance of the plea of insanity. From the defendant's standpoint the plea is the equivalent to a determination, because it is a judicial admission placing the fact of insanity "beyond the range of either needing evidence or of permitting dispute" should the prosecution accept it.[19] In our judgment, reliance on a voluntary plea, given with the advice of counsel, as a basis for shifting the burden of proof in a subsequent hearing is more sound than reliance on a finding by a preponderance of the evidence; certainly it is fairer to the defendant where he has made no plea of insanity and has constantly maintained that at all times he was mentally competent. *See, e. g., Lynch v. Overholser; Lessard v. Schmidt,* 349 F.Supp. 1078, 1094–5 (E.D.Wis.1972), *vacat-*

of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence."

In a criminal case, on the other hand, we do not view the social disutility of convicting an innocent man as equivalent to the disutility of acquitting someone who is guilty. As Mr. Justice Brennan wrote for the Court in *Speiser v. Randall,* 357 U.S. 513, 525–526, 78 S.Ct. 1332, 1341–1342, 2 L.Ed.2d 1460 (1958):

"There is always in litigation a margin of error representing error in factfinding, which both parties must take into account. Where one party has at stake an interest of transcending value—as a criminal defendant his liberty—this margin of error is reduced as to him by the process of placing on the other party the burden . . . of persuading the factfinder at the conclusion of the trial of his guilt beyond a reasonable doubt."

In this context, . . . the requirement of proof beyond a reasonable doubt in a criminal case [is] bottomed on a fundamental value determination of our society that it is far worse to convict an innocent man than to let a guilty man go free.

*Id.* at 370–2, 90 S.Ct. at 1076–1077, 25 L.Ed. at 379–80 (footnotes omitted).

17. *Lynch v. Overholser,* 369 U.S. 705, 715, 82 S.Ct. 1063, 8 L.Ed.2d 211, 218; *United States v. Brown,* 155 U.S.App.D.C. 402, 407, 478 F.2d 606, 611 (1973). *See* Note, *Commitment Following Acquittal by Reason of Insanity and the Equal Protection of the Laws,* 116 U.Pa.L.Rev. 924, 940 (1968): "A strong state interest in deterring false pleas . . . might conceivably justify placing the burden of proof on the person seeking to avoid commitment."

18. *See In re Franklin,* 7 Cal.3d 126, 101 Cal. Rptr. 553, 562, 496 P.2d 465, 474 (1972):

As stated in *Mills v. State, supra,* the fact that defendant must prove his insanity by a preponderance of the evidence constitutes "a very solid basis upon which the presumption of continuing mental illness may rest. This difference in the fundamental nature of the verdict of acquittal by reason of insanity makes inapposite the cases in which the presumption is not recognized."

19. 9 J. Wigmore, Evidence § 2589, at 587 (3d Ed. 1940).

*ed and remanded on other grounds,* 414 U.S. 473, 94 S.Ct. 713, 38 L.Ed.2d 661 (1974).

The parties have also discussed other procedures and rights pertaining to the AS 12.45.090 hearing. They generally agree that there may be a six person jury, that the defendant is entitled to reasonable notice, to present evidence, to confront and cross-examine witnesses, and to appeal, and has the right to be present, and to counsel. We approve of the foregoing. The parties have also discussed questions concerning commitment length and review procedures if Alto is committed following an AS 12.45.-090 hearing. In most respects they agree. Where they do not agree, we decline to give an advisory opinion. We do note our concurrence with the approach taken by both parties that periodic review should be available as in cases of civil commitment. The burden and standard of proof at the periodic review hearings should be the same as at the initial hearing, so long as the commitment under AS 12.45.090 is still in effect. However, an AS 12.45.090 commitment is not indefinite. It should have a fixed length, taking into account individualized factors similar to those relevant to sentencing,[20] and should in no event exceed the maximum sentence for the offense. Continued detention following expiration of the AS 12.45.090 term should be governed by the same standard and burden of proof as in civil commitments.

The order of the superior court is reversed.

---

**20.** *See State v. Chaney,* 477 P.2d 441 (Alaska 1970).