**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Robert GILES, Defendant-Appellant.**

**No. 81SA419.**

Supreme Court of Colorado,
En Banc.

May 2, 1983.

J.D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Nathan B. Coats, Asst. Atty. Gen., Denver, for plaintiff-appellee.

J. Gregory Walta, Colo. State Public Defender, Susan L. Fralick, Deputy State Public Defender, Denver, for defendant-appellant.

QUINN, Justice.

The defendant-appellant Robert Giles appeals from a denial of a Crim.P. 35 motion to vacate a judgment of conviction and sentence for the crime of escape while being confined pursuant to an insanity commitment. He claims that the application of the escape statute to him violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment, *U.S. Const.* Amend. XIV, and the constitutional prohibition against cruel and unusual punishment, *U.S. Const.* Amend. VIII.[1] We affirm the judgment.

## I.

In 1979 the defendant was charged with having escaped on November 27, 1978, from the Colorado State Hospital at Pueblo, Colorado, where he had been committed as a result of an insanity adjudication in connection with the crimes of kidnapping and assault with a deadly weapon. Thereafter, on July 3, 1980, the defendant, who was represented by counsel, entered into a plea bargain which resulted in his pleading guilty to misdemeanor escape.[2] He was sentenced to six months on his plea of guilty. Shortly

---

1. This appeal was transferred to this court from the court of appeals because of the defendant's constitutional challenge to the escape statute. Sections 13–4–102(1)(b) and 13–4–110(1)(a), C.R.S.1973.

2. Section 18–8–208(6)(b), C.R.S.1973 (1978 Repl.Vol. 8), states:

"(6) A person who knowingly escapes confinement while being confined pursuant to a commitment under article 8 of title 16, C.R.S. 1973:

\* \* \* \* \* \*

(b) Commits a class 1 misdemeanor if the person had been charged with a felony at the

thereafter the defendant filed a motion under Crim.P. 35(b),[3] alleging that the escape statute could not be constitutionally applied to him by reason of his insanity commitment. The court conducted a hearing on the defendant's motion and denied his claim for postconviction relief. This appeal followed.

## II.

The defendant argues that a commitment following an insanity adjudication carries with it a continuing presumption of legal incapacity during the period of commitment and, therefore, the application of the escape statute to a person so committed violates due process of law. Although the premise in the defendant's argument is correct, the conclusion does not follow from the premise.

■ The Colorado Criminal Code states that "[a] person who is insane ... is not responsible for his conduct defined as criminal." Section 18–1–802, C.R.S.1973 (1978 Repl.Vol. 8). The standard for legal insanity is whether a person at the time of the

commission of a criminal act was "so diseased or defective in mind ... as to be incapable of distinguishing right from wrong with respect to that act, or being able so to distinguish, has suffered such an impairment of mind by disease or defect as to destroy the willpower and render him incapable of choosing the right and refraining from doing the wrong." Section 16–8–101, C.R.S.1973 (1978 Repl.Vol. 8). Thus, an insanity adjudication represents a judicial determination that an accused is not legally responsible for a past criminal act by reason of a mental disease or defect which existed at the time the act was committed. It is simply not true, however, that an insanity adjudication renders a committed person legally incapable of committing future crimes during the period of commitment.

■ What our prior case law has recognized is that an insanity adjudication results in a presumptive continuation of a state of mental incapacity until it is shown that sanity has been restored. *E.g., People v. Chavez,* 629 P.2d 1040 (Colo.1981);[4] *People v. Kernanen,* 178 Colo. 234, 497 P.2d 8

---

proceeding in which the person was committed, if in the escape the person does not travel from the state of Colorado ...."

On the date of the offense a class 1 misdemeanor was punishable by a sentence of from six to twenty-four months. Section 18–1–106, C.R.S. 1973 (1978 Repl.Vol. 8).

3. Crim.P. 35(b) is now Crim.P. 35(c)(2) which, as did its predecessor, provides in pertinent part as follows:

"(2) Notwithstanding the fact that no review of a conviction of crime was sought by appeal within the time prescribed therefor, or that a judgment of conviction was affirmed upon appeal, every person convicted of a crime is entitled as a matter of right to make application for postconviction review upon the grounds hereinafter set forth. Such an application for postconviction review must, in good faith, allege one or more of the following grounds to justify a hearing thereon:

(I) That the conviction was obtained or sentence imposed in violation of the Constitution or laws of the United States or the constitution or laws of this state;

(II) That the applicant was convicted under a statute that is in violation of the Constitution of the United States or the constitution

of this state, or that the conduct for which the applicant was prosecuted is constitutionally protected ...."

4. We stated in *Chavez:*

"Section 16–8–105(2) provides that '[e]very person is presumed to be sane; but, once any evidence of insanity is introduced, the people have the burden of proving sanity beyond a reasonable doubt.' *See People v. Kernanen,* 178 Colo. 234, 497 P.2d 8 (1972); *People ex rel. Juhan v. District Court,* [165 Colo. 253, 439 P.2d 741 (1968)]; *Castro v. People,* 140 Colo. 493, 346 P.2d 1020 (1959); *Leick v. People* [136 Colo. 535, 322 P.2d 674 (1958)], *supra.* In one sense an adjudication of insanity represents a judicial determination that the prosecution has failed to prove the defendant's sanity beyond a reasonable doubt....

"In another sense, however, particularly in view of the statutory presumption of sanity in the first instance, it is not unreasonable to infer from an insanity adjudication that the accused suffered from a mental disease or defect at the time he engaged in the proscribed conduct. A finding of not guilty by reason of insanity generally will be based on some evidence of insanity sufficient to overcome the contrary presumption. *See People*

(1972). But we have never held or implied that this presumption is conclusive and irrebuttable. On the contrary we recognized in *McConnell v. People,* 157 Colo. 235, 238, 402 P.2d 75, 77 (1965), that an insane person "is criminally responsible for acts committed during a lucid interval." A prior adjudication therefore serves to rebut the presumption of sanity and to create a presumption of insanity, but it does not elevate the prior adjudication to the status of *res judicata* on the issue of the defendant's culpability for future criminal acts. *See Arridy v. People,* 103 Colo. 29, 82 P.2d 757 (1938) (a prior adjudication of mental incompetency and a commitment to a state home for mental defectives did not render the defendant legally incapable of forming the requisite *mens rea* for murder).

■■■ The defendant in this case could have placed in issue his mental capacity to commit the crime of escape with which he was charged. The crime of escape required as an essential element the *mens rea* of "knowingly." Section 18–8–208(6), C.R.S. 1973 (1978 Repl.Vol. 8). To act knowingly with respect to conduct or to a circumstance described by a statute defining an offense a person must be aware that his conduct is of such nature or that such circumstance exists. Section 18–1–501(6), C.R.S.1973 (1978 Repl.Vol. 8). The defendant, however, did not contest his legal capacity to commit the crime of escape, but elected instead to admit all the elements of the charge. We find nothing in the due process clause to prohibit the application of the escape statute or other criminal statutes to those committed to a state facility as a result of a prior insanity

adjudication in relation to past criminal charges. To hold otherwise would inexorably lead to what is a virtual grant of immunity for all criminal acts committed by persons adjudicated insane during the term of their insanity commitment. The insanity adjudication has no such talismanic effect. We therefore reject the defendant's due process argument.

### III.

The defendant next argues that subjecting him to criminal responsibility for escape violates equal protection of the laws because no such criminal sanctions apply to those persons who escape from a facility to which they are civilly committed. Section 27–10–110(2), C.R.S.1973 (1982 Repl.Vol. 11), in this respect merely requires that a civilly committed escapee "be returned to the facility by order of the court without a hearing or by the superintendent or director of such facility without order of court." The defendant claims that this disparity in treatment cannot survive an equal protection challenge. We disagree.

In *People v. Chavez, supra,* we held that the automatic commitment procedure following an insanity adjudication involved neither a suspect classification nor a fundamental right, and, therefore, the appropriate inquiry in resolving an equal protection challenge based upon a claimed disparity in treatment between civil and criminal commitments was the "rational basis" standard of review—that is, whether the challenged classification bears some rational relationship to a legitimate state interest. We further recognized in *Chavez* that the govern-

---

*v. Kernanen, supra.* Nor is it unfair or unreasonable to believe that the disorder likely is a continuing one since mental illness for the most part is a long lasting phenomenon. *See, e.g.,* Weihofen, *Institutional Treatment of Persons Acquitted by Reason of Insanity,* 38 Tex.L.Rev. 849 (1960); Note, *Commitment Following Acquittal by Reason of Insanity and the Equal Protection of the Laws,* 116 U.Pa.L.Rev. 924, 935 (1968); Comment, *Compulsory Commitment Following a Successful Insanity Defense,* 56 Nw.U.L.Rev. 409, 451

(1961). For this reason the law recognizes that an insanity adjudication results in a presumptive continuation of a state of mental incapacity until it is shown that sanity has been restored. *See, e.g., People v. Kernanen, supra; In re Franklin, supra; In the Matter of Lewis,* 403 A.2d 1115 (Del.1979); *Mills v. State,* 256 A.2d 752 (Del.1969); *State v. Allan,* 166 N.W.2d 752 (Iowa 1969); *State ex rel. Barnes v. Behan,* 80 S.D. 370, 124 N.W.2d 179 (1963)." 629 P.2d at 1047–48 (footnotes omitted).

mental interests underlying the civil commitment procedures are substantially different from those involved in an insanity commitment:

"Civil commitment procedures anticipate that some petitions seeking the commitment of another might be based on nothing more than unusual or eccentric behavior and thus devoid of any real basis for commitment. Placing the burden on the party seeking the detention of another 'is one way to impress the factfinder with the importance of the decision and thereby perhaps to reduce the chances that inappropriate commitments will be ordered.' *Addington v. Texas,* [441 U.S. 418,] 427, 99 S.Ct. [1804,] 1810, 60 L.Ed.2d [323,] 331 [ (1979)]. Furthermore, the person whose commitment is sought often will disclaim the existence of a mental illness requiring institutional care and treatment. Finally, and most importantly, the statutory procedures for civil commitment are not intended to apply to those persons whose illness has resulted in criminal conduct. In contrast, a defendant acquitted by reason of insanity will have asserted his mental illness as a defense to criminal conduct; there will already have been a judicial determination of probable cause that he engaged in the criminal act, section 16–8–103(3), C.R. S.1973 (1978 Repl.Vol. 8); and there will have been an actual adjudication that he was legally insane when he participated in the offense charged against him.

"The assertion of the insanity defense and the judicial determination implicit in the insanity adjudication—that the accused engaged in criminal conduct as a result of mental disease or a questionable state of legal sanity—place the legally insane defendant in a special class of persons posing an imminent danger to public safety if immediately released from detention." 629 P.2d at 1053.

■ Given the state's obvious interest "in protecting the public from those who previously have engaged in overt criminal conduct but have been relieved of criminal responsibility by reason of legal insanity," *People v. Chavez, id.* at 1052, we have no difficulty in finding a rational basis for legislation that proscribes as criminal a knowing escape by a person committed to an institution as a result of an insanity adjudication in a criminal case, but does not impose a similar sanction upon a person who escapes from a facility to which he has been civilly committed.

## IV.

■ The defendant finally argues that the application of the escape statute to him is tantamount to the infliction of punishment for a mental illness in violation of the constitutional prohibition against cruel and unusual punishment. *U.S. Const.* Amend. VIII. This argument does not merit extended discussion. The imposition of criminal liability for the crime of escape while confined pursuant to an insanity commitment does not constitute punishment for a mental illness. What the statute proscribes and punishes is the commission of a discrete criminal act committed with the requisite *mens rea* of "knowingly." The defendant chose not to contest but instead elected to admit the conduct forbidden by law and the culpable mental state when he elected to plead guilty to the charge. The punishment imposed was for a distinct crime and not, as in *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), for an illness or infirmity beyond the control of the defendant. Nor is the penalty imposed in any manner disproportionate to the conduct on which it is based. *See People v. Gutierrez,* 622 P.2d 547 (Colo.1981).

The judgment is affirmed.