Frank A. ALTO, Appellant,

v.

STATE of Alaska, Appellee.

No. A–7961.

Court of Appeals of Alaska.

Feb. 14, 2003.

Quinlan Steiner, Assistant Public Defender, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

COATS, Chief Judge.

This case raises the question of whether a person who is found not guilty by reason of insanity and committed to the custody of the Commissioner of Health and Social Services can be convicted of escape for removing himself from that custody. We conclude that the defendant can be convicted of escape under these circumstances.

### Facts and proceedings

Frank A. Alto brutally beat and killed a woman in 1973.[1] He was convicted of rape, grand larceny, and murder in the first degree in a court trial.[2] On appeal, the Alaska Supreme Court reversed Alto's convictions and ordered that a judgment of not guilty by reason of insanity under former AS 12.45.083 be entered against Alto because the court determined that the State had not proved beyond a reasonable doubt that Alto was sane.[3] On remand, the trial court found that Alto was "suffering from a mental disease or defect that causes him to be a danger to the public peace and safety." The court committed Alto to the custody of the Commissioner of Health and Social Services for a term not to exceed 30 years.

Alto was committed to the Alaska Psychiatric Institute. While he was returning from a field trip to Girdwood, Alaska, Alto managed to evade the person who was guarding him. He was later located and detained in New York State after which an Alaska State Trooper returned him to Alaska. The State charged Alto with escape in the second degree,[4] a class B felony. In a trial conducted by Superior Court Judge Larry D. Card, a jury convicted Alto. Judge Card sentenced Alto to 6 years of imprisonment. Alto appeals his conviction and his sentence. We affirm.

### Whether an individual who is adjudicated not guilty by reason of insanity may be convicted of escape

■ In order to convict a person of escape in the second degree, the State must prove that the person unlawfully "removed [himself] from official detention for a felony." Alto contends that because he was found not guilty by reason of insanity of his felony offenses, he was not in official detention for a felony, and therefore he could not be convicted of felony escape. Alto was charged with violating AS 11.56.310(a)(1)(B), which provides that: "One commits the crime of escape in the second degree if, without lawful authority, one removes oneself from *official detention for a felony* or for extradition."[5] Alaska Statute 11.81.900(b)(39) defines "official detention" as: "custody, arrest, surrender in lieu of arrest, or actual or constructive restraint under an order of a court in a criminal or juvenile proceeding, other than an order of conditional bail release."

Alto does not contest that he was in "official detention" as defined in this statute. Instead, he argues that his detention was not "for a felony." He argues that the phrase "official detention for a felony" does not apply to individuals who are found not guilty by reason of insanity and subsequently committed because the commitment is not "in connection with or in reference to a felony." Specifically, he contends that "[t]he felony charge for which an insanity acquittee is initially detained is merely an allegation which brings an individual to the attention of the court. The subsequent commitment is in reference to and in connection with the defendant's mental status and its relationship to public safety." Because the issue that Alto raises is one of statutory interpretation, this court must review it de novo.[6]

1. *Alto v. State,* 565 P.2d 492, 493 (Alaska 1977) (*Alto I*). The Alaska Supreme Court's decision contains a discussion of the facts surrounding this crime.

2. *Id.*

3. *Id.* at 502–03. The rape charge was overturned because the court held that Alto had never

actually been charged with the crime. *Id.* at 495.

4. AS 11.56.310(a)(1)(B).

5. AS 11.56.310(a)(1)(B) (emphasis added).

6. *Conner v. State,* 696 P.2d 680, 682 (Alaska App.1985).

This court addressed the definition of the phrase "for a felony," as contained in AS 11.56.310(a)(1)(B), in *State v. Stores*.[7] In *Stores*, a police officer arrested Stores on a felony warrant for a parole violation.[8] Stores was on parole on a felony burglary conviction.[9] Stores ran away after the officer began handcuffing him, but the officer apprehended him fifteen to twenty minutes later.[10] The State charged Stores with escape in the second degree for removing himself from official detention "for a felony."[11] Stores moved to dismiss, arguing that he was in detention on a parole violation, not for a felony.[12] The trial court agreed with Stores and dismissed the indictment.[13] The State appealed, and we reversed the trial court.

In arguing for its interpretation of the statute criminalizing escape in the second degree, the State argued that if the phrase "for a felony" did not apply to a person who absconded from detention for a parole violation, then it would not be a crime for a parolee to remove himself from custody. The State argued that this would be an unreasonable interpretation.[14] We agreed with the State's reasoning.[15] We then examined the language of the statute and concluded:

> According to these sources, a fair definition of the term "for a felony" is "in reference to" a crime that is punishable by more than one years' imprisonment. This is a broad definition, which suggests that the statute was intended to cover a wide variety of cases and situations, including detentions for both felony convictions and felony charges.[16]

We then examined the legislative history and concluded that the history was consistent with the plain meaning of the statute:

> [The legislature] intended [the statute] to apply to those who abscond from detention for a felony. It is a felony, whether the person is detained for a felony that has not yet been charged, or a felony that has been formally charged or for a felony on which a conviction has been entered.[17]

We concluded that Stores could be convicted of escape in the second degree.

We also interpreted the phrase "for a felony" in *LeFever v. State*.[18] LeFever was in official detention as a result of juvenile proceedings for offenses that would have been felonies if he had been an adult.[19] LeFever absconded from custody and was charged and convicted of unlawful evasion in the first degree for failing to return to official detention "while charged with or convicted of a felony."[20] LeFever argued that because juvenile delinquency proceedings are distinct from adult criminal proceedings under Alaska law, he had not been charged with or convicted of a crime but had been adjudicated a delinquent.[21] He argued that therefore he had not been charged with or convicted of a felony for purposes of the statute.[22]

We concluded that "the unlawful evasion statutes ... are together intended to cover all people who fail to return to official detention, and that the statutes' introductory language [specifying a felony or misdemeanor conviction] is intended simply to classify unlawful evasion by seriousness of the evader's conduct, not to exclude adjudicated delin-

7. 816 P.2d 206 (Alaska App.1991).

8. *Id.* at 207.

9. *Id.*

10. *Id.* at 208.

11. *Id.*

12. *Id.*

13. *Id.*

14. *Id.*

15. *Id.*

16. *Id.* at 210–011.

17. *Id.* at 211.

18. 877 P.2d 1298 (Alaska App.1994).

19. *Id.* at 1298.

20. *Id.* at 1299 (quoting AS 11.56.340(a)).

21. *Id.*

22. *Id.*

quents from the definition of unlawful evasion."[23]

Therefore, in *Stores* and *LeFever* we found that the critical element of the offense was whether the defendant removed himself from official detention. We concluded that the legislature divided official detention into two categories: "official detention for a felony" and "official detention for a misdemeanor." If the underlying charge that placed the defendant in official detention was a felony, then he committed a more serious offense than if he had been in official detention for a misdemeanor.

If we apply a similar analysis to Alto's escape conviction, we come to the conclusion that Alto was properly convicted of escape. We first turn to the analysis by the Alaska Supreme Court in *State v. Alto (Alto II )*,[24] a case in which the Supreme Court determined that Alto had the burden of proving his sanity in order to be released from detention. Alto was originally charged and convicted of murder, rape, and grand larceny.[25] He was only found not guilty by reason of insanity after the supreme court concluded that the State had not established his sanity beyond a reasonable doubt.[26] After the case was remanded to the superior court, both Alto and the State petitioned the supreme court to decide who had the burden of establishing whether Alto was or was not suffering from a mental disease or defect that caused him to be a danger to the public peace and safety.[27] The supreme court concluded that Alto had the burden to establish by a preponderance of the evidence that he was not presently suffering from a mental disease or defect that caused him to be a danger.[28]

In reaching this decision, the supreme court made several pertinent observations about a verdict of not guilty by reason of insanity. The court concluded that "[a] verdict of not guilty by reason of insanity contains within it the finding that, beyond a reasonable doubt, the defendant committed the act charged."[29] The court observed that in the criminal case in order to convict Alto of a criminal offense, the State had the burden of establishing Alto's sanity beyond a reasonable doubt.[30] The court reasoned that requiring the State to prove Alto's sanity in order to hold him could create a dangerous loophole. The State might be unable to prove Alto sane beyond a reasonable doubt and might also be unable to prove that he was insane and must be committed.[31] The court observed that placing such a burden on the State would allow dangerous offenders to evade both conviction and commitment to a mental hospital.[32] Consequently, the court concluded that Alto had the burden of proving, by a preponderance of the evidence, that he was not suffering from a mental disease or defect that caused him to be a danger to the public.[33]

The supreme court's analysis supports the conclusion that Alto was in official detention "for a felony." As the supreme court noted, Alto had been found, beyond a reasonable doubt, to have committed the serious felony offenses that resulted in his detention. He was found not guilty by reason of insanity because the State did not establish his sanity beyond a reasonable doubt. But Alto remained in official detention because he was unable to establish that he was not suffering from a mental disease or defect that caused him to be dangerous. Alto's detention is

23. *Id.* at 1301–02. The current unlawful evasion statute combines the former first-degree and second-degree unlawful evasion statutes, creating one statute that no longer has separate degrees. The former statute created separate first-degree and second-degree charges for unlawful evasion by distinguishing between whether the defendant was charged with a felony or with a misdemeanor when he escaped. AS 11.56.340, *as amended by* ch. 51 § 3, SLA 1995.

24. 589 P.2d 402 (Alaska 1979).

25. *Alto I*, 565 P.2d at 493.

26. *Id.* at 502–03.

27. *Alto II*, 589 P.2d at 403.

28. *Id.*

29. *Id.* at 404.

30. *Id.*

31. *Id.* at 404–05.

32. *Id.*

33. *Id.* at 405.

clearly connected with his commission of a felony offense and seems similar to the connection that we found in *Stores* and *LeFever*.

Alto tries to compare criminal commitments after a finding of not guilty by reason of insanity to involuntary civil commitments, arguing that the original felony charge is "merely an allegation which brings an individual to the attention of the court." But many courts, including the United States Supreme Court, treat these two classes of commitments differently.[34] These courts have reasoned that the differential treatment was justified because insanity acquittees have already demonstrated their dangerousness through violent antisocial behavior.[35] As the Alaska Supreme Court explained in *Alto II*, "[the acquittee by reason of insanity] differs from the civil committee who is confined because of his potential to commit dangerous acts, not because he has committed them." [36]

Alto's conclusion about the similarities between civil and criminal commitments also ignores many of the important differences between the two statutory schemes that the legislature has provided for in Alaska.[37] For instance, the maximum term that a judge may impose after an insanity acquittal under our current statutory scheme is limited only by the maximum term of imprisonment for the crime from which the defendant was acquitted.[38] Only upon completing a term of commitment equal to the maximum term of imprisonment for the crime for which the defendant was acquitted is the acquittee governed by the same civil procedures as other civil committees.[39] In contrast, the maximum term that a civil court may commit an individual involuntarily is 180 days.[40] Once the original 180–day period expires, a court may recommit the individual only upon a properly filed petition for an additional maxi-

mum term of 180 days.[41] Thus on its face, the Alaska legislature has linked the insanity acquittee's commitment term to the underlying crime. This link provides additional support that the commitment is "in reference to" the felony charge, as we outlined in *Stores*.

Furthermore, similarly to *Stores* and *LeFever*, if we were to conclude that the escape statute did not apply to Alto, this would mean that the legislature did not establish an offense for a person who removed himself from official detention when committed for an offense for which he has been found not guilty by reason of insanity. Such an interpretation of the statute is unreasonable. In contrast to Alto's argument that criminal and civil commitments are similar, the relevant enabling statutes differ on this point as well.

The civil statutory scheme provides a procedure for returning civil committees who escape. Alaska Statute 47.30.790 provides procedures for using a peace officer or other responsible party to return a civilly committed individual to their treatment facility when they are absent without authorization; this statute does not provide for criminal sanctions. The criminal code, on the other hand, provides no analogous procedure for returning individuals whose commitments are a result of an insanity acquittal, nor does it refer to the civil procedure to handle such situations.

For all the above reasons, we accordingly conclude that the State could properly charge and the jury could properly convict Alto for escape in the second degree.

*Whether Judge Card properly instructed the jury on the escape charge*

■ Alto argues that Judge Card did not properly instruct the jury on escape. Alto's

---

**34.** *See, e.g., Jones v. United States*, 463 U.S. 354, 367, 103 S.Ct. 3043, 3051, 77 L.Ed.2d 694 (1983); *People v. Giles*, 662 P.2d 1073, 1077 (Colo.1983) (citing *People v. Chavez*, 629 P.2d 1040, 1053 (Colo.1981)); *People ex rel. Henig v. Comm'r of Mental Hygiene*, 43 N.Y.2d 334, 401 N.Y.S.2d 462, 372 N.E.2d 304, 306 (1977).

**35.** *See Jones*, 463 U.S. at 367, 103 S.Ct. at 3051; *Giles*, 662 P.2d at 1077; *Henig*, 401 N.Y.S.2d 462, 372 N.E.2d at 306.

**36.** *Alto II*, 589 P.2d at 406.

**37.** *Compare* AS 12.47.090 and AS 47.30.700–47.30.815.

**38.** AS 12.47.090(d).

**39.** AS 12.47.090(f).

**40.** AS 47.30.745(b); 47.30.755(a).

**41.** AS 47.30.770(c) ("Successive 180–day commitments are permissible on the same ground and under the same procedures as the original 180–day commitment.").

arguments are colored by his original contention, which we have rejected, that he could not be properly convicted of escape because he had been found not guilty by reason of insanity. Judge Card rejected Alto's premise, and we have upheld this ruling. But the record shows that Judge Card was also aware that, in spite of the fact that Alto could be properly convicted of escape, ultimately the jury had the responsibility to determine whether Alto had committed the elements of the offense.

After considerable discussion, the parties entered into a stipulation that the court read to the jury:

> The parties have stipulated that the offense charged in case 3AN–S73–433 CR [the 1973 homicide] was a felony offense. The offense carried a possible term of imprisonment in excess of one year. You may accept this ... fact as true and as having been proven.
>
> For a felony means in reference to or in connection with a felony offense. A felony means a crime for which a sentence of imprisonment for a term of more than one year is authorized. The outcome of the case which resulted in Frank Alto's official detention at API is not relevant to your decision in this case.

Although Alto attempts to attack this stipulation on appeal, Alto entered into the stipulation on his own accord at trial. He therefore has waived any basis to object to the stipulation.[42] The stipulation appears to be reasonable and designed to avoid prejudicing the jury by acquainting the jury with the facts underlying the 1973 homicide.

Judge Card gave the jury the following instruction on the elements of escape in the second degree:

> First, that the event in question occurred at or near Anchorage, Alaska, and on or about November 5, 1998;

Second, that FRANK AUGIE ALTO knowingly removed himself from official detention;

Third, that he was in official detention for a felony;

Fourth, that he recklessly disregarded whether he was without lawful authority to remove himself.

This instruction properly sets out the elements of the offense of escape.

■ In a related argument, Alto argues that the instruction is flawed because it did not require the State to prove that he recklessly disregarded whether he was in official detention for a felony. Alto essentially argues that the State had to prove that Alto was aware of the degree of the offense that he committed. We have previously rejected similar contentions.

In *Hoople v. State*,[43] the defendant argued that, for the State to convict her of felony driving while intoxicated, the State had to prove that she had some awareness of her previous convictions for driving while intoxicated.[44] We rejected this contention. We held that "when the defendant's basic underlying conduct is criminal, no culpable mental state need to be proved with respect to an aggravating circumstance that raises the degree of the crime."[45]

In *Ortberg v. State*,[46] the defendant was convicted of criminal mischief in the second degree for causing properly damage in an amount of $500 or more.[47] Ortberg argued that the court erred in failing to instruct the jury that he knew or had reason to believe that the damage he caused would ultimately exceed $500.[48] This court held that, in order to convict Ortberg, the jury had to find that he intentionally damaged the property of another without reason to believe that his act

**42.** *See Ross v. State*, 950 P.2d 587, 591 (Alaska App.1997) (holding that argument on appeal was not properly preserved where the defendant had entered into a stipulation at trial and only later attacked the stipulation's wording).

**43.** 985 P.2d 1004 (Alaska App.1999).

**44.** *Id.* at 1005.

**45.** *Id.* at 1006.

**46.** 751 P.2d 1368 (Alaska App.1988).

**47.** *Id.* at 1374.

**48.** *Id.*

was authorized.[49] But we concluded that the statute did not require the State to prove that Ortberg knew of and had reason to know that the damage that he caused would exceed $500.[50]

Alto's situation is similar. The primary difference between second-degree and fourth-degree escape is the classification of the underlying offense that led to the "official detention"—a felony for second-degree escape and a misdemeanor for fourth-degree escape.[51] This classification helps mete out the appropriate punishment upon a violation of the escape statutes. The *Stores* court pointed out the purpose of this classification under the former escape statutes, explaining that:

> [T]he apparent purpose of the classification is simply to establish the appropriate degree of escape to be charged and the period of incarceration to be imposed.
>
> . . . .
>
> Clearly, *the term "for a felony" is a qualifying term* which gauges the appropriate degree of the offense to be charged and the appropriate punishment.[52]

As in *Ortberg* and *Hoople*, whether Alto was "reckless" regarding the degree of the offense that led to his "official detention" is irrelevant. The classification simply provides a framework within which a court can provide an appropriate degree of punishment.

Alto attempts to distinguish *Hoople* and *Ortberg* by arguing that, unlike those defendants, his actions in removing himself from official detention were not "inherently criminal." We do not find this distinction persuasive. In order to convict Alto, the State had to prove that (1) Alto knowingly removed himself from official detention and (2) he recklessly disregarded whether he was without lawful authority to remove himself. This is how the court instructed the jury. The State did not have to prove that Alto was

aware that he was "in official detention for a felony," a difficult legal issue that we have just resolved. We conclude that Judge Card did not err in the instructions that he gave the jury.

*Whether Judge Card abused his discretion in making several evidentiary rulings*

 Alto raises several arguments about various evidentiary rulings that Judge Card made during the trial. There are two key problems with Alto's argument. First, he has completely failed to develop any theory, under legal precedent or otherwise, that would justify his claims. He cites no authority, statutes, or cases that support his claims. Instead, he includes a laundry list of items that he claims would have exonerated him at trial by showing that he was not aware he was under official detention for a felony. He does not show why these evidentiary items themselves are admissible or why the trial court's reasoning was faulty. In fact, he does not discuss the trial court's rulings at all, other than to state they were wrong. His discussion is limited to a sentence or phrase describing the evidence he wanted admitted, followed by his conclusion that the trial court erred. Other than these conclusory statements of error, he provides no reason why this court should find that the trial court abused its discretion in excluding the evidence at trial. "[W]here a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal."[53]

To the extent that Alto has not waived these arguments, the arguments appear to have no merit. Alto's arguments are based on his assumption, which we have previously rejected, that he could not be convicted of escape where he was in official detention for an offense for which he had been found not guilty by reason of insanity or that he was not aware of the fact that he was in official

---

49. *Id.*

50. *Id.*

51. *Compare* AS 11.56.310 and 11.56.330.

52. *Stores,* 816 P.2d at 212 n. 5 (emphasis added).

53. *Adamson v. Univ. of Alaska,* 819 P.2d 886, 889 n. 3 (Alaska 1991); *see also Petersen v. Mut. Life Ins. Co. of N.Y.,* 803 P.2d 406, 411 n. 8 (Alaska 1990) (mentioning that trial court refused to allow testimony is insufficient without "any *legal argument* as to why the court erred").

detention for a felony. We have previously rejected Alto's arguments that were based on these assumptions. We accordingly conclude, not only did Alto waive these arguments by failing to properly brief them, but to the extent that we can ascertain the nature of Alto's arguments, they have no merit.

### Whether Alto's sentence is excessive

■ Escape in the second degree is a class B felony.[54] The maximum penalty for a class B felony is 10 years of imprisonment; the presumptive term for a second-felony offender is 4 years of imprisonment and the presumptive term for a third-felony offender is 6 years of imprisonment.[55] As we have previously stated, Judge Card sentenced Alto to 6 years of imprisonment.

In sentencing Alto, Judge Card found the aggravating factor that Alto's prior criminal history included conduct involving aggravated or repeated instances of assaultive behavior.[56] Alto points out that Judge Card relied on the 1973 homicide to find this aggravating factor. Alto again argues that, because he was found not guilty by reason of insanity, he was never convicted of a criminal offense. He argues that therefore Judge Card erred in relying on the homicide in finding the aggravating factor. We disagree.

As we have formerly pointed out, in order to find Alto not guilty by reason of insanity, the court initially had to find, beyond a reasonable doubt, that Alto committed the murder with which he was charged.[57] Furthermore, a finding that a defendant has a prior criminal history of aggravated assaultive conduct does not require proof that the defendant was prosecuted or convicted.[58] We conclude that Judge Card did not err in considering Alto's prior murder in determining whether the aggravating factor applied to Alto's conduct. We also conclude that Judge Card did not err in finding the aggravating factor that Alto had a criminal history of repeated instances of similar criminal con-

duct.[59] He based this finding on Alto's admission that he had several prior escapes from the Alaska Psychiatric Institute. Alto does not apparently contest this aggravating factor.

In sentencing Alto, Judge Card pointed out that in some ways Alto's escape offense was not extremely serious because Alto did not use any weapons or assault anyone. Although Alto fled to New York and was gone for a substantial period of time (two weeks), there was no evidence that he committed any other crimes during this time. But Judge Card found the case exceptionally aggravated because of the extraordinary circumstances of Alto's prior homicide. He also pointed out that the record showed that Alto had apparently not changed his anti-social behavior or shown that he could be successfully treated. He pointed out that when a person with Alto's background escapes, people in society are placed in great fear. He stated that he imposed his sentence in part to express that community condemnation.

Except for the finding that Alto was not guilty by reason of insanity, his prior criminal conduct would have qualified him as a third-felony offender facing a presumptive sentence of 6 years of imprisonment. Alto's prior history of criminal offenses and the fact that he had been found not guilty by reason of insanity create a rational conclusion that his escape placed a dangerous person at large in society. Judge Card could properly weigh that fear and the danger to the public in concluding that Alto's escape was an aggravated offense. We conclude that the sentence is not clearly mistaken.

### Conclusion

Alto's conviction and sentence are AFFIRMED.

---

54. AS 11.56.310(b).

55. AS 12.55.125(d).

56. AS 12.55.155(c)(8).

57. *Alto II,* 589 P.2d at 404.

58. *Russell v. State,* 934 P.2d 1335, 1347 (Alaska App.1997); *Fagan v. State,* 779 P.2d 1258, 1260 (Alaska App.1989).

59. AS 12.55.155(c)(21).