Michael A. WASHINGTON, Appellant,

v.

STATE of Alaska, Appellee.

No. A–3789.

Court of Appeals of Alaska.

March 13, 1992.

R. Scott Taylor, Asst. Public Defender, and John B. Salemi, Public Defender, Anchorage, for appellant.

Brent Cole, Asst. Dist. Atty., Edward E. McNally, Dist. Atty., Anchorage, and Charles E. Cole, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

OPINION

BRYNER, Chief Judge.

Michael A. Washington entered a plea of no contest to one count of first-degree murder. Superior Court Judge Karl S. Johnstone sentenced Washington to the maximum term of ninety-nine years. Judge Johnstone also ordered that the sentence be served without possibility of parole. Washington appeals his sentence as excessive. We affirm.

On May 21, 1989, Washington purchased a .22 caliber semi-automatic rifle from a store in Anchorage. On his firearms appli-

cation, Washington falsely claimed that he had never previously been committed to a mental institution. Sometime later, Washington removed the glass from one of his apartment windows, replacing it with a dark tent fly that could easily be moved aside. On the evening of June 5, 1989, Washington began firing his rifle out the window. He shot at an unoccupied car, a pole, and an electrical transformer, but made no effort to shoot at people who were in the vicinity.

The Anchorage Police Department received a call reporting that a gun was being discharged in the area of Washington's apartment. Officer Louis Mizelle was dispatched to the scene and stopped his patrol car near Washington's apartment building. Moments after Mizelle got out of his car, Washington began firing at the officer, striking him with at least six bullets. Officer Mizelle died of the bullet wounds later that night. Other officers captured and arrested Washington.

Washington was charged with first-degree murder. Shortly after his arrest, Washington was found to be incompetent to proceed as a result of mental illness. He was placed on medication and was eventually found competent.

Washington was thirty-two years old at the time of this offense. He had previously been diagnosed as suffering from chronic paranoid schizophrenia and had occasionally received medication and treatment for this condition. While Washington had never previously been convicted of a felony, he had several misdemeanor convictions, as well as a history of violent and aggressive behavior toward law enforcement officers. Washington's assaultive conduct apparently occurred at times when he was off medication for his mental disorder. Although Washington appeared to pose no danger to public safety when taking appropriate medication, he had consistently resisted treatment and had regularly refused medication except under compulsion in an institutional setting. At the time of this offense, Washington was not taking his medication, even though his mental health counselors had urged him to do so.

Following his arrest, Washington was examined by four psychiatrists and a forensic psychologist. All concurred that, at the time of the crime, Washington was actively suffering from paranoid schizophrenia and that the shooting incident was the product of this mental illness. The examiners believed that Washington's actions were prompted by a command delusion that he was incapable of controlling or resisting.

The professionals disagreed, however, as to the issue of criminal responsibility. Washington's experts concluded that he was incapable of appreciating the nature and quality of his conduct and was therefore not guilty by reason of insanity. *See* AS 12.47.010 (insanity excluding responsibility). In contrast, the state's experts believed that Washington was capable of understanding what he was doing when he shot Officer Mizelle. Moreover, the state's experts concluded that, despite his mental illness, Washington remained capable of forming the specific intent to kill the officer.[1]

---

1. The state relied on evaluations by two psychiatrists—Dr. F.M. Criswell and Dr. Irvin A. Rothrock—and one forensic psychologist—Dr. David J. Sperbeck. Dr. Criswell concluded, in relevant part: "[I]t is clear that at the time of the offense the defendant knew he was shooting at a person, and he knew that person was a police officer.... He knew he was shooting a gun, he knew he was shooting the gun at a person, he knew that person was a police officer, and he knew immediately that he committed a crime." Dr. Rothrock wrote: "At the time of the alleged offense, I believe Mr. Washington could appreciate the nature and quality of his act and had the capacity to form a culpable state of mind, specifically the intent to shoot the police officer." Dr. Sperbeck concluded:

With respect to his culpability at the time of the offense, it is my opinion that the defendant intended to murder Officer Mizelle through his actions. In spite of the fact that he was hallucinating auditorily and possibly even visually, he knew that the officer was a human being, he knew that his gun was capable of destruction, and he knew it was wrong and would result in trouble if he fired his gun, and in particular, fired his gun at an individual and hurt him. In spite of the fact that the defendant's mental capacities were diminished due to his acute psychosis at the time of this offense, he, nonetheless, achieved his conscious objective of killing the officer, as he was ordered to by the voices he was hearing in his mind at the time.

Washington initially contemplated an insanity defense. At the outset of trial, however, he withdrew his plea of not guilty and entered a plea of no contest. In exchange for the plea, the prosecution assured Washington that it would not seek to have him found guilty but mentally ill. *See* AS 12.-47.060.

In imposing sentence, Judge Johnstone concluded that Washington deliberately created a situation that he knew would result in the police being summoned, and then shot Officer Mizelle, knowing that he was a police officer and intending to kill him. Given the serious nature of the crime and Washington's history of aggression toward law enforcement officers, the judge characterized Washington's conduct as among the worst within the definition of the offense.

Judge Johnstone further found Washington to be an extreme danger to society when he is not taking anti-psychotic medication. Because Washington had a history of refusing medication and refused to acknowledge that he suffered from a mental illness, Judge Johnstone concluded that his behavior could be controlled—and public safety assured—only by placement in a confined setting. Relying on medical evidence that paranoid schizophrenia is an incurable condition, Judge Johnstone decided that Washington's prospects for rehabilitation would remain extremely poor throughout his lifetime and that Washington could neither be rehabilitated nor deterred. Judge Johnstone found that a maximum term, with parole eligibility restricted, was therefore necessary for the protection of the public.

On appeal, Washington contends that the imposition of a maximum term of ninety-nine years was inappropriate because his conduct was the product of his mental illness and did not involve premeditation or malice. Yet Judge Johnstone's characterization of Washington's crime as a deliberate and premeditated ambush killing finds strong support in the sentencing record. The psychiatric evidence in the record does not compel a contrary view. The evidence submitted by the state's experts supports the conclusion that, although lacking the ability to conform his conduct to the requirements of the law, Washington was fully capable of acting deliberately, with the specific intent to kill.[2]

As a deliberate, premeditated killing, Washington's conduct falls squarely within the category of first-degree murders for which we have consistently upheld maximum sentences. *See, e.g., Riley v. State,* 720 P.2d 951, 952 & n. 1 (Alaska App.1986).

Washington nevertheless argues that Judge Johnstone was obligated to treat his mental illness as a mitigating factor. *See* AS 12.55.155(d)(3) (allowing a mitigating factor to be found when the defendant's conduct results from compulsion insufficient to constitute a complete defense). We agree that Washington's mental illness was a factor that Judge Johnstone could properly take into account to decide the extent to which his offense was mitigated. *See Barrett v. State,* 772 P.2d 559, 574–75 (Alaska App.1989). However, the fact that Judge Johnstone was free to consider Washington's mental condition as part of the sentencing process does not mean that the judge was inexorably bound to reduce Washington's sentence in light of that factor.

Washington's case appears to involve precisely the type of conduct that led the Alaska legislature to amend our former insanity statute and to enact, instead, the provisions dealing with offenders who are

2. *See* footnote 1, *supra.* Washington argues that the medical evidence supports a conclusion that his capacity to form specific intent was diminished. In advancing this argument, he apparently refers to Dr. Sperbeck's report, which does mention that Washington's mental illness rendered him "sufficiently impaired to constitute a diminished capacity." In context, however, it is apparent that Dr. Sperbeck did not mean his reference to "diminished capacity" to suggest that Washington's mental illness might have negated his ability to form the culpable mental state necessary for first-degree murder. In the paragraph immediately following his reference to diminished capacity, Dr. Sperbeck specifically concludes that, despite Washington's diminished capacity, he shot Officer Mizelle with the awareness that Mizelle was a police officer and with the specific intent to kill.

found guilty but mentally ill. *See* AS 12.-47.010–12.47.090; *see also State v. Patterson,* 740 P.2d 944, 946–48 (Alaska 1987). While the current statutory scheme requires the state to provide appropriate medical and psychiatric care to offenders found guilty but mentally ill, it does not call for any reduction in the overall length of confinement to be imposed. This legislation thus strongly suggests that an offender whose crime is the product of a mental illness should not automatically be entitled to a more mitigated sentence than would have been appropriate had no mental illness existed. *See* AS 12.47.050.

In this case, Washington withdrew his plea of not guilty and entered a plea of no contest with the understanding that the state would not seek to have him adjudicated guilty but mentally ill. Although Washington was certainly entitled to enter into an agreement with the state to avoid the consequences of being found guilty but mentally ill, he was not entitled—by bypassing the guilty but mentally ill provisions—to insist that his conduct be given mitigated treatment in sentencing. As we recognized in *Hart v. State,* 702 P.2d 651, 664 (Alaska App.1985), a holding that all offenses caused by mental illness are mitigated "might conflict with the legislature's attempts to definitively deal with the interplay between mental illness and crime in AS 12.47.010, *et seq.*"

Washington lastly challenges Judge Johnstone's decision to restrict his eligibility for parole. However, Judge Johnstone expressly decided that the restriction was necessary for the protection of the public, and the judge carefully explained his reasons for reaching this conclusion. This explanation is supported by the record and

meets the requirement of *Newell v. State,* 771 P.2d 873 (Alaska App.1989).[3]

Having independently reviewed the entire sentencing record, we conclude that the sentence imposed by the superior court is not clearly mistaken. *See McClain v. State,* 519 P.2d 811, 813–14 (Alaska 1974).

The sentence is AFFIRMED.

---

**3.** Washington's argument against the parole restriction is based on evidence that he presented below indicating that persons suffering from paranoid schizophrenia become less prone to act violently as they grow older. Washington also produced evidence indicating that long-term treatment alternatives that would allow his symptoms to be reliably controlled outside an institutional setting may be developed in the future. According to Washington, the possibility of a diminished tendency toward violence with age and of future advances in medical technology are factors that militate against re-

striction of parole. Judge Johnstone, however, found Washington's evidence as to the effects of age and the likelihood of future medical advances to be speculative and unconvincing. This finding is not clearly erroneous. Moreover, in the event Washington's condition materially alters with time, or if significant new treatment alternatives are developed, Washington will be entitled to seek further relief from the superior court, which retains jurisdiction to modify the parole restriction under Alaska Criminal Rule 35(b).